BEACHLAWN BUILDING CORPORATION *v.* CITY
OF ST. CLAIR SHORES.

1. LICENSES—BUILDING PERMITS—EXCESSIVE FEES.
    Amendments to ordinances and fees charged thereunder for build-
    ing permits were invalid, where the revenue derived therefrom
    was in excess of the cost of issuing the license and regulating
    the business to which it applied.

2. SAME—EXCESSIVE FEES—INVOLUNTARY PAYMENT.
    Payments of excessive permit fees to a public officer must have
    been made involuntarily in order to be recoverable.

3. SAME—STATUTES—PAYMENT OF PROPERTY TAXES UNDER PROTEST.
    The statute relative to payment of taxes or special assessments on
    personal or real property under protest, in writing, and for
    suit, within 30 days, to recover the same has no application
    to the recovery of excessive building permit fees (CL 1948,
    § 211.53).

4. SAME—BUILDING PERMITS—CONSTRUCTION BUSINESS—EXCESSIVE
    FEES—PAYMENT—COMPULSION.
    Corporation engaged in the building construction business which
    could not safely proceed to build houses without securing build-
    ing permits from defendant city under its valid ordinance was
    compelled to pay excessive fees under invalid amendments to
    the ordinance which had increased the fees for the permits
    in order to continue in its business, hence, such payments may
    not be said to have been made voluntarily, especially, where
    plaintiff had made reasonable, albeit futile, efforts to make
    payments under protest.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 33 Am Jur, Licenses §§ 41–46.
[2, 3, 4, 6] 33 Am Jur, Licenses §§ 88, 89.
    When may payment of tax or assessments be regarded as in-
    voluntary or made under duress. 84 ALR 294.
[5] 17A Am Jur, Duress and Undue Influence § 2.
[7] 5 Am Jur 2d, Appeal and Error §§ 963–965; 39 Am Jur, New
    Trial § 26 *et seq.*

5. WORDS AND PHRASES—DURESS.

Duress exists when one by the unlawful act of another is induced, to perform some act under circumstances which deprive him of the exercise of free will.

6. LICENSES—INVOLUNTARY PAYMENT OF EXCESSIVE FEES.

Payment of fees for building permits, invalid because in excess of cost of issuing the license and regulating the business of building construction, matters peculiarly within knowledge of defendant city, *held*, involuntary so far as excess is concerned.

7. APPEAL AND ERROR—REMAND—EXCESSIVE BUILDING PERMIT FEES.

Plaintiff would not be entitled to a directed verdict for the amount of building permit fees that were in excess of what might be lawfully charged, where the ascertainment of the amount of excess payment would involve the Supreme Court's invasion of the province of the trier of the facts upon reversal of judgment for defendant, hence, case is remanded for new trial for such determination.

Appeal from Macomb; Noe (Alton H.), J. Submitted February 7, 1963. (Calendar No. 57, Docket No. 49,417.) Decided May 9, 1963.

Action by Beachlawn Building Corporation, a Michigan corporation, against the City of St. Clair Shores, a municipal corporation, to recover excessive fees paid for building permits under invalid ordinances. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Schuur & Keating, (Patrick J. Keating, of counsel), for plaintiff.*

*John H. Yoe, for defendant.*

DETHMERS, J. Plaintiff was engaged in the business of constructing residences in defendant city from 1954 through 1959. A city ordinance required a builder to obtain a building permit and to pay a fee therefor before commencement of construction of a house. Plaintiff had been complying with those requirements.

In October of 1954 and again in July of 1956 the ordinance was amended, both times to increase the fees for building permits. In *Merrelli.* v. *City of St. Clair Shores,* 355 Mich 575, this Court held the amendments and charge of fees thereunder to be invalid because the revenue derived therefrom was in excess of the cost of issuing the license and regulating the business to which it applied.

Plaintiff obtained its building permits through an agent. He would submit the building plans to defendant's building department for approval. Later he would be advised by defendant's employees as to the amount of the fee, based on their estimate of the building cost, pay the fee, and receive the permit. Plaintiff then would reimburse him for the amount of the fee.

When the agent of plaintiff, after the first increase in fees became effective, sought a permit 1 of defendant's clerks informed him of the increase. The agent protested. Thereafter he tendered a check for the amount, based on defendant's building cost estimate, which would have been due under the former ordinance requirement. This was refused by defendant's employee. Next, the agent tendered a check for the increased amount and sought to pay under protest, but he was informed by defendant's employee that there was no provision for such payment and that a check marked as paid under protest would be refused. The agent then paid the full amount and received the permit. The same procedure occurred the second time the fees were increased. The agent testified that he followed that course repeatedly on other occasions, although not every time, when he obtained permits during the 4–1/2 year period here involved. He did not file written protests.

This suit is to recover the excess in payments made by plaintiff to defendant as fees for such permits during the period involved. There is no dispute be-

tween the parties that to be recoverable the payments must have been made involuntarily. *Thompson* v. *City of Detroit,* 114 Mich 502. Finding that plaintiff paid the excess voluntarily, the court directed a verdict for defendant. Plaintiff appeals.

The question is whether plaintiff's payments were voluntary or under compulsion or duress so as to be involuntary.

CL 1948, § 211.53 (Stat Ann 1960 Rev § 7.97), provides for payment of taxes or special assessments on personal or real property under protest, in writing, and for suit, within 30 days, to recover same. It has no application to permit fees. As in *Thompson,* so here we may say that the question must be determined on general principles rather than any reliance upon statute. We hold that under the facts in this case, as above noted, plaintiff did everything he reasonably could be required to do to effectuate a payment under protest, which, in effect, defendant declined to permit.

Defendant's reliance for determination of the voluntariness of plaintiff's payments rests in large measure upon *Baldwin* v. *Village of Chesaning,* 188 Mich 17 (Ann Cas 1918B, 512). This Court there affirmed, by reason of its equal division, the trial court's direction of verdict for defendant village. In that case, plaintiff, a saloonkeeper, after selling his business, sued to recover $1,000 representing the $500 fee he had paid each of 2 years under an invalid ordinance for a saloonkeeper's license. The nature of the invalidity does not expressly appear, but in the 4-justice affirming opinion it is said that the case is governed by *Betts* v. *Village of Reading,* 93 Mich 77. In the latter, plaintiff's payments of saloon license fees were made under a void ordinance which provided for issuance of liquor sales licenses prohibited by the village charter. The Court held that plaintiff was not ignorant of the law or his rights

under it and, therefore, it could not be said that he paid under duress, distinguishing that case, in that respect, from *Cribbs* v. *Sowle,* 87 Mich 340 (24 Am St Rep 166). So, too, in *City of Detroit* v. *Martin,* 34 Mich 170 (22 Am Rep 512), in which plaintiff real property owner sued to recover payment under protest of a tax totally void on its face, this Court held that plaintiff's knowledge of the facts and presumably of the law rendered the payment voluntary and unrecoverable. It was also said that if the invalidity of the tax were such that a tax sale thereon would not constitute a cloud on the title, payment of the tax must be held voluntary and even payment under protest would not render it involuntary. This was discredited and held to be dictum in *Thompson* v. *City of Detroit, supra.* These cases, other than *Thompson,* do not apply to this case in which the invalidity of the amount of the fees, because disproportionate to the cost of issuing the license and regulating the business to which it applied, did not appear on its face but could be determined with finality only on the basis of knowledge of those costs to defendant, which was within defendant's knowledge but not that of plaintiff. Furthermore, in *Baldwin* and *Betts* the plaintiffs were operating their businesses and might have continued to do so without paying the unlawfully exacted charge because no valid supporting ordinance existed. Here defendant had a valid building permit ordinance antedating its 1954 and 1956 amendments. Plaintiff could not have proceeded safely to build houses without permits from defendant. This distinction has direct bearing on the question of compulsion or duress or voluntariness of payment, since plaintiff could only pay what defendant demanded or give up its business. For annotation on this general subject, with some holdings one way and some the other as to voluntariness of payment of an invalid

charge in order to obtain privilege of doing business, see 80 ALR2d 1040.

The payments are not rendered voluntary by reason of the fact that plaintiff might have sought redress in the courts. *Thompson* v. *City of Detroit, supra.*

In *Hackley* v. *Headley,* 45 Mich 569, 574, this Court said:

"Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will."

In *Detroit* v. *Martin, supra,* 174, the following is stated:

"There is no doubt but that where the parties do not stand upon equal terms, as * * * where the plaintiff was entitled to a license, and the defendant to grant it, but refused to deliver it except upon payment of a sum of money he was not entitled to * * * in all such cases, the party pays under compulsion and may afterwards in an action of assumpsit recover back the amount of the illegal exaction."

We think that under the facts in this case plaintiff's payments were involuntary, made under the compulsion or duress of being denied the right to continue its business unless it paid the unlawful exactions.

In point is the following from syllabus 2 in *Pingree* v. *Mutual Gas Co.,* 107 Mich 156:

"Where an ordinance provides that a gas company shall not charge consumers more than an average of the rates charged in certain cities, payment of a charge in excess of such rate is not voluntary, where made in ignorance of the fact that it is excessive, even though the consumer be negligent in not ascertaining the fact."

To the same effect is *City of Saginaw* v. *Consumers Power Co.,* 304 Mich 491. In the instant case the facts touching the costs involved which would afford the basis for a valid charge of fees were within defendant's knowledge. They were not known to plaintiff. The payments of the excess were, therefore, not voluntary.

Plaintiff seeks reversal and an order requiring the trial court to direct a verdict in an amount certain, being the amount that testimony for plaintiff indicated was the difference between the excessive fees plaintiff paid during the period in question and the amount which it would have paid under the ordinance before its amendment. The latter would involve our invasion of the province of the trier of the facts in determining the amount to which plaintiff is entitled. That we decline to do.

Reversed and remanded for new trial in accord herewith. Costs to plaintiff.

Carr, C. J., and Kelly, Black, Kavanagh, Souris, Smith, and O'Hara, JJ., concurred.